# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERCYVAL DRYDEN, | 1:10-cv-01169 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in San Diego County Superior Court in 1993 of second degree murder. He is serving a sentence of nineteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its September 29, 2008,

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

decision finding Petitioner unsuitable for parole.  Petitioner claims that the state court decision finding some evidence supported the Board of Parole Hearings (Board) determination that Petitioner presented an unreasonable risk of danger to society was unreasonable.

Petitioner filed a habeas court petition challenging the Board's decision in the San Diego County Superior Court on March 23, 2009.  The petition was denied on May 18, 2009.  Petitioner next filed a habeas petition in the California Court of Appeal, Fourth Appellate District, on June 25, 2009.  The appellate court denied the petition in a reasoned decision on August 19, 2009.  Petitioner then filed a habeas petition in the California Supreme Court on September 29, 2009.  The petition was summarily denied on March 10, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on June 29, 2010.  Respondent filed an answer to the petition on September 13, 2010.  Petitioner filed a traverse on October 6, 2010.

## STATEMENT OF FACTS[2]

Petitioner suspected Vannola Thetsombandith (the cousin of victim Phouvilay Thetsombandith) of stealing and vandalizing his car.  Petitioner demanded that Phian Thetsombandith (the father of Vannola and uncle of Phouvilay) compensate him for damage to his car but Phian refused.  Witnesses saw Petitioner, armed with a gun, force Phouvilay into his car, strike him in the head and drive off with him.  Petitioner later bragged he had shot and killed Phouvilay and buried his body where it would never be found.  To this day, the body has not been recovered.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

---

[2] This information is taken from the summary of the crime set forth in the opinion of the California Court of Appeal. (See Resp't's Answer Ex. 4.)

Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the

3

states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme.  Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).  "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate

4

```
                incidents.
            (B) The offense was carried out in a dispassionate and calculated manner,
                such as an execution-style murder.
            (C) The victim was abused, defiled or mutilated during or after the
        offense.
            (D) The offense was carried out in a manner which demonstrates an
                exceptionally callous disregard for human suffering.
            (E) The motive for the crime is inexplicable or very trivial in relation to
                the offense.
```

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function

5

1     within the law upon release.

2 Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

3     The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

    Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

    The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public.  It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'"  Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.   Review of State Court Decision

The appellate court rendered the last reasoned decision and rejected Petitioner's claims as follows:

> The Board reviewed petitioner's accomplishments in prison, but despite numerous positives, it denied parole based on the following reasons: (1) the facts and circumstances of the commitment offense; (2) petitioner has a prior criminal history that includes arrests for indecent assault, rape, unlawful sexual intercourse, robbery, attempted robbery, carrying a gun, and drug violations; (3) petitioner's current attitude about the crime demonstrates he lacks insight, minimizes his conduct, and does not take responsibility for his actions; (4) petitioner made statements about the crime that were inconsistent and not credible; (5) petitioner's psychological evaluation was unfavorable; (6) petitioner lacks remorse, and he has done nothing to demonstrate remorse, such as attempt to repair the damage he has done to the victim's family; (7) petitioner committed serious prison misconduct as late as 2005; and (8) the district attorney opposes parole.

> Some evidence supports the Board's decision. For example, contrary to the evidence against petitioner, including his statements to witnesses that he committed the crime, petitioner maintained before the Board that the victim is actually alive and living somewhere.  Petitioner stated he has "no idea" what happened to the victim.  When asked about his understanding of his conviction, he merely stated he is "supposed to be responsible for the death of [Phouvilay Thetsombandith]."  Based on this, the Board properly determined petitioner lacks insight, minimizes his conduct, and does not take responsibility for his actions.  The Board did not require petitioner to admit guilt, as he contends.  Rather, petitioner chose to inform the Board that he believes the victim is still alive, and the Board determined he was not credible based on his own statements that were used against him at trial, witness testimony, and the jury findings.

> Additionally, petitioner's psychological evaluation demonstrates he is currently dangerous.  The psychologist diagnosed petitioner with antisocial personality traits. Petitioner has a moderate range of psychopathy, a moderate-high risk for sexual reoffense, and an overall risk assessment of low to moderate.  These indicators of petitioner's risk of reoffense demonstrate he is currently dangerous.

>Finally, petitioner has received two serious rules violations while in prison. Petitioner received the first serious rules violation in 1998 for excessive contact during visiting. Despite being found guilty of this, and despite petitioner's acknowledgment of its effect on his likelihood of parole, he committed another serious rules violation in 2005 for sexual behavior when he had sexual intercourse with his visitor while in the visiting room. Petitioner's inability to follow prison rules, and his decision to repeat similar violations despite the severe ramifications, supports the Board's decision that he is currently dangerous. [Citation.]

(See Resp't's Answer Ex. 4.)

Petitioner fails to demonstrate that the state court decision was unreasonable. The appellate court cited ample evidence in support of the Board's decision finding that Petitioner remained an unreasonable risk of danger to the public if released.

Petitioner's attitude and lack of insight regarding the commitment offense alone showed he remained a danger. Cal. Code Regs., tit. 15, § 2402(b). Petitioner has not accepted responsibility for the crime at all. He still maintains that the victim is still alive somewhere and that he does not know what happened to the victim despite the evidence of eyewitnesses who watched him kidnap the victim by force and with a gun and the evidence of witnesses who stated Petitioner had bragged about shooting the victim and burying him where he could not be found. "An inmate's version of the offense may indicate a lack of insight and provide a nexus between the offense and his current dangerousness." In re Shaputis, 44 Cal.4th 1241, 1260 (2008). In this case, the Board determined that Petitioner did not accept responsibility for his actions, minimized his conduct, and lacked insight into the causative factors of his conduct. The superior court's determination that some evidence supported the Board's finding was not unreasonable.

The state court also determined the psychological evaluation provided some evidence of a current risk of danger. As noted by the court, Petitioner has antisocial personality traits. He has a moderate range of psychopathy. The psychologist concluded that Petitioner poses a moderate to high risk of sexual reoffense, and an overall risk ranging from low to moderate. In light of these findings, the state court's determination that some evidence supported the Board's determination was not unreasonable.

Finally, the state court noted that Petitioner continued his criminal behavior in prison. He sustained two serious rules violations for sexual misconduct, the most recent occurring in 2005.

The court concluded that Petitioner's inability to follow rules and his decision to repeat similar violations despite the serious ramifications supported the Board's finding of current dangerousness. The state court's decision was reasonable.

Although the Board also considered numerous positive factors in favor of suitability, the Board concluded that the negative factors greatly outweighed the positive factors. The state court determination that there was some evidence to support the Board's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 10, 2010**            /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE